UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JILL D. DAVIS, : |  |
|     Plaintiff, : |  |
| : |  |
| v. : |  |
| : | C.A. No. 14-228M |
| AMICA MUTUAL INSURANCE : |  |
| COMPANY, : |  |
|     Defendant. : |  |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

    Defendant Amica Mutual Insurance Company ("Amica") has attempted to frame for decision at the pleading stage the choice of law applicable to a claim of insurance bad faith in a case that has already been found to have "no clear geographic center." ECF No. 22 at 1.[1] Before the Court for report and recommendation is the motion of Amica to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to stay and/or bifurcate Count II of Plaintiff Dr. Jill Davis's ("Plaintiff") Complaint alleging bad faith and to dismiss the claim for "enhanced compensatory damages." ECF No. 31. Finding it premature to perform the fact intensive analysis required to determine the law applicable to this case, I recommend that the motion be denied without prejudice to presentation of these issues on a better developed factual record. See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 5 (1st Cir. 1994) (whether interest-weighing approach or doctrine of *lex loci contractus* should be deployed to select contract choice of law is up to Rhode Island Supreme Court; both require fact-intensive analysis).

---

[1] Amica's motion to dismiss or transfer the venue compelled this Court to examine the location of the relevant events, evidence and witnesses, which are scattered from Florida to Maine, including Massachusetts, New Hampshire and Rhode Island; based on this analysis, the Court held that venue is proper in this Court. ECF No. 22 at 3-5, 9.

At the center of this case is a tragic hit-and-run accident. Plaintiff, just starting her career as a physician, was bicycling home from work as a medical resident at Baystate Medical Center to her Massachusetts residence when she was hit by an unknown driver. Prior to medical school, she had been a domiciliary of New Hampshire and was insured by an uninsured motorist policy and an umbrella policy, both of which were issued in New Hampshire by Amica, a Rhode Island insurance company whose headquarters are in Lincoln, Rhode Island. After undergoing medical treatment in Massachusetts and New Hampshire, and allegedly no longer able to pursue her chosen profession as a doctor due to the accident, Plaintiff moved to Florida, where she currently resides. Discovery has not yet fully fleshed out what events occurred where either with respect to issuance of the policies[2] or with respect to the adjustment or analysis of the claim[3] – the evidence developed so far points both to New Hampshire and Rhode Island.

Plaintiff has asserted two claims against Amica. First, she sues for breach of its contractual duty to pay under the terms of the policies; she claims that the value of her covered loss exceeds the face amount of the policies, while Amica contends that there is no breach because its payment of certain of Plaintiff's medical expenses may well have fully satisfied its contractual obligations. Second, Plaintiff claims that Amica's failure to offer to pay more than a fraction of her full claim was an act of bad faith entitling her to damages exceeding the face amount of the policies. It is the latter claim that is the focus of this motion.

---

[2] Defendant claims the policies were made, negotiated and primarily performed in New Hampshire and that issuance was entirely accomplished in its New Hampshire office. Plaintiff points out that the policies are signed by Amica's president in Lincoln, Rhode Island, and that the final counter-signature is by "Peter H. Cameron," who may have been located (if an internet search may be relied upon) in Lincoln, Rhode Island. ECF No. 36-2 at 2. Because the policies provide that they "shall not be valid unless countersigned by our authorized agent or representative," Plaintiff contends that the last act needed to complete the insurance contract occurred in Rhode Island.

[3] Defendant claims that the adjustment of Plaintiff's claim was done in its New Hampshire office. Plaintiff claims that she was visited in New Hampshire by two Amica claims adjusters, both of whom were based in Rhode Island, establishing that the alleged bad faith decision not to offer to pay the claim occurred, at least in part, in Rhode Island.

Relying first on the law of New Hampshire, Amica asks this Court to resolve unsettled law with respect to an insured's entitlement to recover damages for bad faith in adjusting an insurance claim and to dismiss any claim that Plaintiff might make for "enhanced compensatory damages," the legal construct developed by New Hampshire courts to circumvent the statutory ban on punitive damages.[4] Amica argues that, if such damages are cognizable at all under New Hampshire law for a claim grounded in an insurer's breach of an insurance contract (it contends they are not), Plaintiff must still plausibly plead facts sufficient to meet the threshold of "willful, wanton, and oppressive" conduct. Vratsenes v. N.H. Auto, Inc., 289 A.2d 66, 67 (N.H. 1972) ("in cases where the acts complained of were wanton, malicious, or oppressive, . . . damages . . . can be increased to compensate for the vexation and distress caused . . . by the character of defendant's conduct"). Because she has not pled facts constituting willfulness, wantonness or oppressiveness, Amica argues that Plaintiff's claim for enhanced compensatory damages must be dismissed. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff counters that her bad faith claim is adequately and plausibly stated so that she is entitled to discovery to develop the factual foundation for her various categories of damages.

---

[4] New Hampshire has outlawed punitive damages "in any action, unless provided by statute." N.H. Rev. Stat. § 507:16. Instead, New Hampshire courts award "enhanced compensatory damages" to reflect the aggravating circumstances of an injury caused by conduct that is wanton, malicious or oppressive. Bartlett v. Mut. Pharm. Co., No. 08-CV-00358-JL, 2010 WL 3659789, at *13 (D.N.H. Sept. 14, 2010), rev'd on other grounds sub nom, Mut. Pharm. Co. v. Bartlett, 133 S. Ct. 2466 (2013). New Hampshire law is unsettled as to whether wanton, malicious or oppressive conduct in the adjustment of an insurance claim permits an award of enhanced compensatory damages. Compare Jimenez v. Verdecchia, No. CIV. 99-266-M, 2000 WL 1752803, at *1 (D.N.H. Nov. 22, 2000) ("New Hampshire law does not permit the recovery of enhanced compensatory damages in contract cases, even where the breach is intentional."), with Syncom Indus., Inc. v. Wood, 920 A.2d 117, 1184 (N.H. 2007) (permitting consideration of enhanced compensatory damages in breach of contract and fiduciary duty case involving restrictive covenant); Day v. Hanover Ins. Co., No. 2010-CV-929, 2012 WL 3031120 (N.H. Super. Ct. Apr. 3, 2012) ("whether an insurer's delay in making payment under an insurance policy was in fact in bad faith is a question for a jury"). While an insured's entitlement to sue the insurer for enhanced compensatory damages based on a bad faith delay in making a contractually required payment appears to remain unsettled, New Hampshire courts have long permitted recovery in excess of the face amount of the policy for contract-based "expectation damages" arising from insurer bad faith. Lawton v. Great Sw. Fire Ins. Co., 392 A.2d 576, 580-81 (N.H. 1976).

3

Alternatively assuming that Rhode Island law applies, Amica concedes that the bad faith claim may be asserted, but also contends that Plaintiff may not proceed on the claim until the predicate of breach of the insurance contract has been established. Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003). In reliance on Rhode Island state court cases applying well-settled Rhode Island procedural law,[5] Amica asked the Court to stay Plaintiff's bad faith claim and to bifurcate the trial of the bad faith claim from the trial of the breach of contract claim. Conceding at argument that the decision whether to stay or bifurcate a case pending in this Court is controlled not by the law developed in Rhode Island state courts, but rather by Wolf v. Geico Insurance Co., 682 F. Supp. 2d 197, 198-201 (D.R.I. 2010), Amica now argues that the detailed analysis mandated by Wolf will lead to the conclusion that there are few overlaps between Plaintiff's breach of contract and bad faith claims so that a stay will be found to be appropriate. See Bank of R.I. v. Progressive Cas. Ins. Co., 293 F.R.D. 105, 106 (D.R.I. 2010) (McConnell, J).

Which of these dense factual/legal analyses – the New Hampshire inquiry regarding the viability of bad faith claims or the Rhode Island analysis of whether to stay or bifurcate – must be the focus of this Court's attention depends on the choice of the substantive state law that governs this aspect of the dispute. On this issue, Plaintiff adds to the mix the further complication that a better developed factual record might permit the parties, and the Court, to consider whether the law of one of the other relevant jurisdictions might be applicable (for example, Florida). Recognizing that this is a critical predicate, Amica argues that the Court may

---

[5] See, e.g., Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002) ("claims of insurer bad faith are severed and tried separately from the breach of insurance contract claim"); Imperial Cas. & Indem. Co. v. Bellini, 746 A.2d 130, 134 (R.I. 2000) (courts should "defer discovery in the bad-faith claim until the complaining party has proven the underlying breach-of-contract claim"); Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000-01 (R.I. 1988) (plaintiff cannot obtain discovery of defendant insurer's claim file by bringing simultaneous breach of contract and bad faith claims – plaintiff must first show he is entitled to recover on the contract).

look to the complaint alone and determine at the Fed. R. Civ. P. 12(b)(6) phase that New Hampshire law applies.

Performing a fact-intensive choice of law analysis in a contract case at the Fed. R. Civ. P. 12(b)(6) phase is contrary to well-developed case law in this District. As this Court most recently held in RBS Citizens, N.A. v. Avaya, Inc.:

> Since this matter is at the motion to dismiss state, this Court has before it only the complaint and the documents that have merged into the pleadings. This Court does not have the benefit of discovery. *While some courts have undertaken a choice of law analysis at the motion to dismiss stage, this Court finds that it would be inappropriate to do so in this case because the requisite material to conduct the evidence-intensive analysis is not yet available.*

No. 14-cv-02-M, 2014 WL 2158933, at *5 (D.R.I. May 23, 2014) (emphasis added); see also Silica Tech, L.L.C. v. J-Fiber, GmbH, No. 06-10293-WGY, 2009 WL 2579432, at *3 (D. Mass. Aug. 19, 2009) (choice of law may require fact finding, citing cases); Walker v. Unum Life Ins. Co. of Am., 530 F. Supp. 2d 351, 354 (D. Me. 2008) ("Court lacks sufficient facts on which to conduct a choice of law analysis" on Rule 12(b)(6) motion). Mindful of RBS Citizens, considering that this case is at the motion to dismiss stage, and noting that the parties' argument on this motion has made clear not only that the facts are complex but also that additional discovery is needed to flesh them out, I recommend that this Court defer the choice of law analysis until after the parties have completed discovery relevant to the choice of law decision. Because, as discussed at the hearing, both parties are similarly motivated to tee up a factual record for the purpose of a prompt determination of the choice of law, I do not believe that there is any need for the Court to intervene with a special case management order to expedite the presentation of the question. If either party perceives that a case management order is needed to frame this issue for prompt decision, it or she may return with an appropriate motion.

5

Accordingly, I recommend that this Court deny Amica's motion (ECF No. 31) without prejudice to presentation of the same issues on a factually developed record.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 5, 2015